IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DEBRA GLASS,                    )
                                )
        Plaintiff,              )
                                )
                                )    CIV-12-910-L
v.                              )
                                )
CAROLYN W. COLVIN,              )
  Acting Commissioner of Social )
  Security Administration,[1]   )
                                )
        Defendant.              )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

1

I. Background

Plaintiff applied for benefits in June 2008, and alleged that she became unable to work on December 2, 2006, as a result of lupus, seizures, osteoporosis, osteoarthritis in her neck, headaches, and "bad" days on which she "throw[s] up" and "take[s] naps all through the day" occurring three days a week. (TR 36, 41, 43, 158). She previously worked as an office manager for 22 years until July 23, 2004, when she quit her job for reasons unrelated to her health or a medical condition. (TR 44-47, 150, 158).

At a hearing conducted before Administrative Law Judge McLean ("ALJ") in May 2010, Plaintiff described her usual activities as including laundry, dishes, cooking, sweeping, using a computer, watching television, and driving to her medical appointments. She sometimes shopped for up to three hours at a time and visited museums and a wildlife refuge. Plaintiff described out-of-state family vacations in 2007, 2008 and 2009, but she also stated she avoided the sun because she contracted hives. Plaintiff estimated she could sit for an hour, stand for 30 minutes, walk a block, and lift ten pounds. A vocational expert ("VE") also testified at the hearing.

The ALJ issued a decision in September 2010 finding that Plaintiff was not disabled within the meaning of the Social Security Act between December 2, 2006, her alleged disability onset date, and December 31, 2009, the date on which she was last insured for Title II benefits. Following the well-established sequential evaluation procedure, 20 C.F.R. §404.1520, the ALJ found at step one that Plaintiff had not worked following the date she alleged her disability began and found at step two that Plaintiff had severe impairments due

to systemic lupus erythematosus ("SLE" or "lupus") and a seizure disorder. At step three, the ALJ found that Plaintiff's impairments did not satisfy or equal the requirements of "any listed impairment" deemed disabling *per se* by the agency. (TR 23-24). At step four, the ALJ found that Plaintiff's allegations of disabling pain and symptoms were not credible and that she was capable of performing sedentary work although she "must avoid exposure to hazardous machinery, unprotected heights, and commercial driving." (TR 24).

Relying on the VE's testimony concerning the requirements of Plaintiff's previous job, the ALJ found that Plaintiff was capable of performing her previous job as an office manager on or before the date she was last insured for benefits and she was therefore not disabled. The Appeals Council declined to review the ALJ's decision. Therefore, the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the

3

record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The ALJ determined that Plaintiff's insured status for the purpose of disability insurance benefits expired on December 31, 2009. Consequently, to be entitled to receive disability insurance benefits Plaintiff must show that she was "actually disabled" within the meaning of the Social Security Act prior to the expiration of her insured status on December 31, 2009. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Analysis of Medical Source Opinions

Plaintiff contends that the ALJ erred in analyzing the opinions of treating, examining, and non-examining physicians in the record. Plaintiff first refers to an "opinion" by Dr. Romea. In her decision, the ALJ recognized that Dr. Romea, a rheumatologist who saw Plaintiff one time in May 2008, reported that Plaintiff's laboratory testing "indicates serologic SLE, however her symptoms are fairly nonspecific. The fatigue is disabling, which can be a lupus symptom." (TR 233, 334).[2]

The ALJ appropriately recognized in the decision that statements by physicians that a claimant is disabled or unable to work are not medical opinions because the ultimate issue

---

[2]Unfortunately, the medical record in this case contains many duplicate records.

of disability is "reserved to the Commissioner" and "[o]pinions on issues reserved to the Commissioner, such as those of the [sic] Dr. Raul Romea, M.D., who stated that the claimant's 'fatigue is disabling,' can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence." (TR 27)(citing 20 C.F.R. § 404.1527(d) and SSR 96-5p).

As the ALJ found, Dr. Romea's comment that he felt Plaintiff's fatigue was "disabling" was not an opinion entitled to controlling weight. See Cowan v. Astrue, 552 F.3d 1182, 1189 (10th Cir. 2008)(physician's "brief statement" on medical form was not "true medical opinion" because it did not contain physician's "judgment about the nature and severity of [claimant's] physical limitations, or any information about what activities [claimant] could still perform"); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994)(holding treating physician's opinion that claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"). See 20 C.F.R. § 404.1527(e)(explaining that an opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is disabled or unable to work, is not considered a medical opinion and is not given any special significance, even if offered by a treating source, but will be taken into consideration).

As with any opinion by an acceptable medical source, the ALJ was required to consider Dr. Romea's opinion and discuss the weight assigned to the opinion, including

5

reasons for rejecting the opinion. 20 C.F.R. § 404.1527(c); Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2019). In this case, the ALJ stated that she had "considered the opinion of Dr. Romea and determined that it contradicts the evidence of record, is quite conclusory, and contains very little explanation of the evidence relied on in forming that opinion." (TR 27). The ALJ provided valid reasons supported by the record for rejecting Dr. Romea's conclusory statement. As the Plaintiff concedes, Dr. Romea stated in his report that he ordered more testing to confirm his provisional lupus diagnosis. Dr. Romea also prescribed a medication to "empirically" treat Plaintiff's symptoms pending the results of the additional laboratory tests.[3] Dr. Romea noted he had referred Plaintiff to Dr. Gismondi, a rheumatologist, for further treatment.

Plaintiff saw Dr. Gismondi on only two occasions. In October 2008, Dr. Gismondi noted that Plaintiff had previously been diagnosed with lupus and visual migraine headaches "most likely." (TR 284). The physician noted that Plaintiff self-reported she was generally "feeling okay," that a physical examination of Plaintiff revealed no abnormal findings, that she was "quite stable," and that her laboratory testing did not show "positive" results. (TR

---

[3] Diagnosing lupus is difficult because signs and symptoms vary considerably from person to person. Signs and symptoms of lupus may vary over time and overlap with those of many other disorders. No one test can diagnose lupus. The combination of blood and urine tests, signs and symptoms, and physical examination findings leads to the diagnosis. http://www.mayoclinic.com/health/lupus/DS00115/DSECTION=tests-and-diagnosis.

6

284). However, Dr. Gismondi continued the previously-prescribed medication to treat lupus "empirically" and advised Plaintiff to return for follow-up examination in three months. (TR 284-285).

Plaintiff returned to Dr. Gismondi in February 2009, and Dr. Gismondi noted Plaintiff complained of "having problems" with vomiting, bilateral hand pain, and headaches at bedtime. (TR 331). Medication was prescribed for probable neuritic pain, and Plaintiff was advised to return in two months and to continue the previously-prescribed lupus medication.

There is nothing in the medical record to support Dr. Romea's statement that Plaintiff suffered from "disabling" fatigue. Plaintiff reported numerous activities and extended vacations that were not consistent with her allegation of disabling pain and other symptoms. As the ALJ pointed out in her decision, no other physician placed limitations on Plaintiff's ability to work, and the agency's non-examining medical consultants opined that Plaintiff was able to perform work activities consistent with the ALJ's RFC assessment. The ALJ properly considered Dr. Romea's statement and adequately explained her reasons for rejecting the statement. See Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)(if ALJ rejects medical source opinion ALJ must give specific, legitimate reasons for doing so). Those reasons are supported by the record. Moreover, because Dr. Romea saw Plaintiff only once, Dr. Romea was not a treating physician whose opinion was entitled to any more weight. See 20 C.F.R. § 404.1527 (c)(2)(describing treating sources as "medical professionals most able to provide a detailed, longitudinal picture" of a complaint's medical impairment or impairments). No error occurred with respect to the ALJ's analysis of Dr.

7

Romea's statement.

Plaintiff next contends that the ALJ failed to properly analyze an opinion by Dr. Rogers, Plaintiff's treating family physician, but the record does not contain any opinion by Dr. Rogers concerning Plaintiff's functional abilities or limitations, and Plaintiff points to no such opinion.[4] The ALJ found that Plaintiff had a severe impairment due to lupus and expressly considered Dr. Rogers' office notes of his treatment of Plaintiff appearing in the record. Further, the ALJ considered the third-party statement of Plaintiff's spouse concerning his observations of Plaintiff's seizures and provided valid reasons supported by the record for giving the statement insignificant weight. (TR 27).

The ALJ expressly considered the RFC assessments by Dr. Woodcock and Dr. Fiegel appearing in the record, both of whom determined that Plaintiff could perform light work. (TR 273-280, 291-298). Dr. Woodcock concluded that Plaintiff could occasionally lift 20 pounds and frequently lift ten pounds, stand and/or walk for 6 hours and sit for 6 hours in an eight-hour workday and should avoid unprotected heights or hazardous machinery. (TR 273-280). Dr. Fiegel concluded in December 2008 that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand and/or walk 6 hours in an eight-hour workday, and sit 6 hours in an eight-hour work day. (TR 291-298). A non-examining medical consultant's opinion must be considered using the same relevant factors as are used to consider the opinion of any acceptable medical source. 20 C.F.R. § 404.1527(e); SSR 96-6p.

---

[4] Plaintiff makes an obtuse argument of "cherry-picking" that is not supported by reference to any particular medical evidence. This argument is not considered as it is not supported.

The ALJ stated that she gave some weight to the opinions of the non-examining medical consultants. Although Plaintiff complains that the ALJ should have given more weight to the "opinion" of Dr. Romea, Dr. Romea was not a treating physician, and even if he could be considered a treating physician the ALJ gave valid reasons supported by the record for rejecting Dr. Romea's brief and conclusory statement that Plaintiff had "disabling" fatigue.

IV. Analysis of Seizure Disorder

Plaintiff suggests that the ALJ did not correctly analyze the medical evidence concerning Plaintiff's seizure disorder, but Plaintiff merely posits hypothetical questions, i.e., "[s]houldn't she have discussed . . .," without providing specific references to objective medical evidence in the record to support the argument. The ALJ's decision includes a discussion of the medical evidence with respect to Plaintiff's seizure impairment. The medical evidence supports the ALJ's statement that "the claimant's medical records are void of any complaints of a seizure until June 2008 (Exhibit 6F, 2)." (TR 26). In determining Plaintiff's RFC for work, the ALJ reasoned that Plaintiff "stopped working for reasons not related to the allegedly disabling impairments," she "described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," and "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant has limitations greater than those determined in this decision." (TR 26-28). This rationale is supported by the evidence in the record.

The medical record contains very little evidence of a seizure disorder. Plaintiff

complained to her treating physician, Dr. Rogers, in March 2008 that she had experienced a "spell" with dizziness and nausea. (TR 247). In June 2008, Dr. Rogers noted Plaintiff complained she "had a seizure or at least what she describes as being one," and assessed Plaintiff with a history of seizure disorder as well as lupus. (TR 246). EEG testing showed no clear epileptic disorder. (TR 282, 292, 332). However, in January 2009 Plaintiff self-reported to Dr. Rogers that she could not "drive because of her neuro [sic] events." (TR 319). No treatment for this symptom was recommended. Plaintiff was encouraged by Dr. Rogers in April 2009 to "keep a log" of her "seizure events," but Plaintiff later reported in September 2009 that she had not experienced "any seizure activity." (TR 316, 318).

"[A]s a precaution," however, and despite the absence of supporting objective medical evidence for such restrictions, the ALJ imposed restrictions on Plaintiff's RFC for work limiting her exposure to hazardous machinery, unprotected heights, and commercial driving" in consideration of Plaintiff's severe impairment due to "a seizure disorder." (TR 28). The ALJ did not err in analyzing Plaintiff's seizure disorder.

V. <u>Analysis of One-Time Examiner's Report</u>

Plaintiff asserts that the ALJ misread Dr. Gillan's report of his one-time examination of Plaintiff in April 2010. (TR 387-389). However, Plaintiff merely summarizes Dr. Gillan's report without indicating in what manner the ALJ misread the report. This perfunctory argument does not show any error. The ALJ noted that Dr. Gillan examined Plaintiff on one occasion in 2010 and that she was comfortable, did not complain of current chronic vomiting or fatigue, and exhibited good hand grip and fist in both hands, and that these and other

objective findings referenced in the decision "suggest that the symptoms of the claimant resulting from her 'severe' impairments are not particularly adverse and the undersigned finds that the objective medical evidence is fully consistent with the [RFC finding] and inconsistent with the claimant's allegations of disabling symptom." (TR 26). Because the ALJ's decision reflects consideration and an accurate recitation of the contents of Dr. Gillan's report, no error occurred with respect to the ALJ's analysis of the one-time examiner's report.

VI. Step Three

Plaintiff contends that the ALJ erred in failing to express consideration of particular listings in determining at the third step of the sequential evaluation procedure that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. However, Plaintiff does not posit that any listing or specific objective medical evidence should have been considered by the ALJ in reaching the step three determination.

In Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996), the appellate court reversed a Commissioner's decision in a social security disability case because the ALJ "did not discuss the evidence or his reasons for determining that [the claimant] was not disabled at step three," but instead "merely stated a summary conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment." Id. at 1009.

Subsequently, in Fischer-Ross v. Barnhart, 431 F.3d 729 (10th Cir. 2005), the court clarified that in Clifton it did not "reject the application of harmless error analysis" and explained that an ALJ's decision could be affirmed, despite the ALJ's failure to make

11

specific step three findings, when "confirmed or unchallenged findings made elsewhere in the ALJ's decision [i.e., at steps four and five]" "conclusively preclude Claimant's qualification under the listings at step three" such that "[n]o reasonable factfinder could conclude otherwise." Id. at 734-735.

In this case, the ALJ failed to explain what listings were considered or what evidence she relied on to conclude that Plaintiff's impairments did not meet or equal the requirements of "any" listed impairment. (TR 23-24). Nevertheless, Plaintiff has not pointed to objective medical evidence that reflects findings implicating the severity of the requirements of any listed impairment. Plaintiff has the "step three burden to present evidence establishing her impairments meet or equal listed impairments." Id. at 733. To satisfy this burden, Plaintiff must establish her impairment(s) "meet all of the specified medical criteria. An impairment that manifests only some . . . criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Here, the ALJ failed to discuss the listings or the evidence that supported her summary findings at step three. This error is harmless because a reasonable factfinder would not have found that one of Plaintiff's impairments or a combination of her impairments met or equaled a listed impairment under 20 C.F.R. pt. 404, subpt. P, app. 1.

In the remainder of the decision, the ALJ discussed in detail the evidence supporting the RFC and credibility determinations, and appropriately relied on the VE's testimony in determining that Plaintiff's RFC did not preclude her performance of her previous office manager position. There is no opinion in the record by a treating or examining medical

source, other than the conclusory and unsupported statement by Dr. Romea of "disabling" fatigue, that Plaintiff was disabled or unable to work.

Plaintiff did not allege she experienced convulsive seizures. The listing for nonconvulsive epilepsy requires seizures "occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment" with "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." 20 C.F.R. pt. 404, subpt. P, app. 1, §11.03. As the ALJ pointed out, Plaintiff did not complain of "seizures" until June 2008 (TR 26), and she described wide-ranging activities, including multiple, extended vacations limited only by stopping every two hours while her husband drove them to various out-of-state locations. (TR 25-26). Additionally, Dr. Fiegel noted that Plaintiff's description of her seizure symptoms was "atypical." (TR 292).

The listing for lupus requires a definite level of severity (either "[i]nvolvment of two or more organs/body systems" or "[r]epeated manifestations of SLE with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss))" and a definite impact on daily living (either "marked" limitation of daily living activities, "marked" limitation in maintaining social functioning, or "marked" limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace). 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.02. Plaintiff does not argue with references to specific evidence in the record that her lupus impairment meets the criteria of the listed impairment.

The ALJ's decision includes a discussion of the medical and non-medical evidence in the record, none of which reflected evidence sufficient to satisfy or equal the listing for lupus. Accordingly, the ALJ's error in failing to specifically discuss the relevant listings in relation to the medical evidence was harmless.

VII. Step Four - Credibility and RFC

Plaintiff contends that the ALJ's evaluation of the evidence at step four and credibility determination were faulty. At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The ALJ must first evaluate the claimant's mental and physical RFC. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(quotations and citation omitted); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

In the second phase, the ALJ must determine the mental and physical demands of the claimant's past relevant work. Bowman, 511 F.3d at 1272 (quotations and citation omitted); Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); SSR 82-62, 1982 WL 31386, at 4 (1982). In this phase, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." SSR 82-62, 1982 WL 31386, at 3; see Frantz, supra. In the third phase, the ALJ must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Winfrey, 92 F.3d at 1023 (citations omitted). The claimant bears the burden of proving an inability to perform the duties of the

claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at *1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). An ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at *4 (1996). An ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary, 695 F.3d at 1167.

Plaintiff challenges the ALJ's evaluation of her subjective complaints of pain and other symptoms. Contrary to Plaintiff's argument, the ALJ adequately considered claimant's pain allegations in accord with SSR 88-13 and Luna v. Bowen, 834 F.2d 161 (10th Cir.1987). (TR 26). However, because Plaintiff's allegations of pain were not consistent with her testimony concerning her activities and with the medical evidence, the ALJ properly concluded that Plaintiff's pain was not disabling and did not impact her RFCy to perform her past relevant work. See Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir.1988)(a finding of

15

disability requires more than the inability to work without pain). In making this determination, the ALJ considered several of the relevant factors, including Plaintiff's daily activities, the effectiveness of her medicaitons, and the frequency of her medical contacts. See SSR 96-7p, 1996 WL 374186, at * 3; Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Plaintiff is correct that lupus symptoms can sometimes be disabling. However, in this case the record evidence did not reflect findings of disabling pain or other symptoms resulting from Plaintiff's lupus or from her seizure disorder. In Dr. Gillan's report of his examination of Plaintiff in April 2010, four months after her insured status expired, Dr. Gillan noted that Plaintiff complained of pain, stiffness, and swelling in her hands. (TR 387). However, she exhibited normal hand movements, and good grip strength, and no swelling or tenderness. Her spinal and other joint movements were normal, she exhibited no swelling or tenderness or other abnormalities, and she did not report "much pain" in her cervical or lumbar spines. (TR 388-389). She also reported that Lyrica® was "work[ing] very well" to relieve her hand pain. (TR 389). The ALJ's decision reflects appropriate consideration of the relevant portions of the medical and non-medical record. The ALJ's RFC determination and step four conclusion of nondisability are supported by substantial evidence in the record. Therefore, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court on or before     August 29th , 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this     9th     day of     August    , 2013.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE